UNITED STATES DISTRICT COURT
Southern District of Florida
Fort Lauderdale Division

**TRAVIS MR. MINOR, Individually,**
    Plaintiff,

VS.                                    CASE NO.:

**SCOTT ISRAEL, in his official capacity
as Sheriff of Broward County, Florida;
DEPUTY TARYN MARTIN, individually
and in her official capacity, and DEPUTY
YANESSA AYRA, individually and in her
official capacity,**
    Defendants.
_____/

## COMPLAINT

COMES NOW the Plaintiff, TRAVIS MINOR, and hereby sues the Defendants, SCOTT ISRAEL, in his official capacity as Sheriff of Broward County ("Israel"), DEPUTY TARYN MARTIN ("Deputy Martin"), individually and in her official capacity, and DEPUTY YANESSA AYRA, individually and in her official capacity, and alleges as follows:

### PARTIES

1. Plaintiff, TRAVIS MINOR (hereinafter "Plaintiff" or "Mr. Minor"), was at all times relevant hereto, a citizen of Florida residing in Hallandale, Broward County, Florida.

2. The Broward County Sheriff's Office Crime Suppression Team is a law enforcement division of the Broward County Sheriff's Office (BCSO) and consists of deputies who, at all times relevant, were acting under the color of law.

3. At all times material hereto, Israel was the Sheriff of Broward County, Florida, and as such, was a constitutional officer of the State of Florida, whose position was organized and exists under and by virtue of the laws of the State of Florida.

4. At all times material hereto, ISRAEL was the employer of DEPUTY MARTIN and DETECTIVE AYRA, who at all times material hereto was acting under the color of law as law enforcement officers of the State of Florida.

5. At all times material hereto, Defendant MARTIN is believed to be a resident of Broward County, Florida.

6. At all times material hereto, Defendant AYRA is believed to be a resident of Broward County, Florida.

## VENUE AND JURISDICTION

7. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 and can accept jurisdiction of the various State tort claims herein pursuant to 28 U.S.C. § 1367.

8. This action is brought by Plaintiff pursuant to 42 U.S.C. § 1983 and § 1988 for violations of MR. MINOR'S Fourth and Fourteenth Amendment rights and is further brought for various State tort claims more specifically set forth below.

9. Pursuant to Florida Statutes § 768.28(6)(a), Plaintiff has notified Israel of his claims prior to the filing of this action and said claims were not resolved as the City did not respond to said notice.

10. Plaintiff has also complied with § 768.28(6)(a) by providing notice and service to the Florida Department of Financial Services.

11. Venue is proper in this Court as the wrongful acts complained of occurred within the Southern District of Florida, Fort Lauderdale Division, and the Defendants are located in Broward County, Florida where the Court is situated.

12. All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

## GENERAL ALLEGATIONS

13. On or about August 29, 2014, the Broward County Sheriff's Office Suppression Team conducted an undercover operation to target street level prostitution.

14. On said date Travis Mr. Minor, a concealed weapons permit holder, purchased a new firearm and was driving southbound on Federal Highway from Fort Lauderdale to Aventura.

15. Mr. Minor stopped at Cyber Pizza Café located at 1200 S. Federal Highway, Dania Beach, Florida.

16. Although a customer may enter the Cyber Pizza Café through the front door by foot, the only available parking is located in the rear of the establishment.

17. The two parking spaces located immediately behind the Cyber Pizza Café are designated handicapped spaces therefore anyone who is not handicapped would be strictly prohibited from parking immediately behind the Cyber Pizza Café.

18. The Cyber Pizza Café is also equipped with outdoor security cameras which are positioned to capture surveillance of the parking lot.

19. The establishment next door to the Cyber Pizza Café is also equipped with outdoor security cameras positioned to capture surveillance of the parking lot.

20. No attempt was made by the BCSO to obtain video or audio footage of the event set forth below.

21. After Mr. Minor parked his car, Deputy Martin, dressed in her own clothes, walked from US 1 to the rear entrance of Cyber Pizza Café where Mr. Minor's vehicle was located.

22. Deputy Martin approached Mr. Minor after he left the café and was walking to his car.

23. Mr. Minor had not spoken to Deputy Martin, waved to her, nodded to her, or in any way attempted to communicate with her.

24. Without provocation from Mr. Minor, Deputy Martin asked Mr. Minor if he had any money.

25. Mr. Minor told her "yes" he had money.

26. Deputy Martin then walked away, and Mr. Minor got in his car to leave.

27. The Crime Suppression Team then rushed in and surrounded Mr. Minor's vehicle, blocking his car in.

28. Deputy Taryn Martin then arrested Mr. Minor for solicitation of prostitution and took him to jail where he spent the night from August 29, 2014 to August 30, 2014.

29. Deputy Martin and the BCSO continued to prosecute Mr. Minor for the charges until the State Attorney determined it had insufficient evidence to prosecute Mr. Minor and dismissed the charges on February 2, 2017.

## INCONSISTENCIES, IRREGULARITIES AND POLICIES OF BCSO

30. Subsequent to Mr. Minor's arrest, Detective Ayra drafted and executed a Probable Cause Affidavit wherein she swore to the following under oath:

    On Friday **March 28, 2014**, The Broward County Sheriff's Office Crime Suppression Team conducted an undercover operation targeting street level prostitution, using Deputy Taryn Martin (11186) posing as a prostitute in a undercover capacity. During the time, Deputy Martin was approached by a black male driving a White Audi. FL 53-WHW. The black male, later identified as Mr. Minor, Travis offered to pay 40.00 in exchange for oral sex. The signal for the deal was given. In doing so the arrest teams moved . . . .

31. The affidavit was sworn to by Detective Ayra on August 29, 2014, the actual date of Mr. Minor's arrest, however, aside from Mr. Minor's name and vehicle information, the

remainder of the affidavit was "cut and pasted" from probable cause affidavits from other persons who were arrested.

32. Detective Ayra's affidavit alleged Mr. Minor offered Deputy Martin $40.00 in exchange for oral sex, while Deputy Martin's supplemental report claims Mr. Minor offered $50.00 in exchange for oral sex.

33. Detective Ayra's affidavit stated Mr. Minor was arrested March 28, 2014, however, he was actually arrested August 29, 2014, the date she executed the affidavit.

34. Detective Ayra, in her affidavit, and Deputy Martin, in her report, wrote that "Deputy Martin was approached by a black male," however in deposition Deputy Martin admitted she was the one who approached Mr. Minor.

35. Deputy Martin completed a Supplemental Report on August 29, 2014; however, it was signed by Detective Ayra in March 2014.

36. Although Deputy Martin was wearing an audio recording device during the incident but was unable to produce a recording of the conversation between she and Mr. Minor.

37. During the operation, Deputy Martin was equipped with an audio-recording device.

38. The BCSO made no attempts to obtain video from Cyber Pizza Café or the other retailers who had video recording devices.

39. There were no photographs of Deputy Martin in undercover clothes or of any other evidence.

40. It was discovered the affidavit from Detective Ayra in this matter was a compilation of other reports from January 17, 2014 and March 28, 2014 cut and pasted together and then sworn to by Detective Ayra.

41. It was also discovered BCSO had previously been warned not to "cut and paste" probable cause affidavits.

42. In October 2005, a prosecutor at the Broward State Attorney's Office noticed several police reports from prostitution stings in Hollywood and Dania Beach claimed the suspects therein made the same statements and acted in identical manners, and in the same order regardless of the incident.

43. This statement was published in the Sun Sentinel in an article titled "Stop Cut-and-Paste Reports."

44. As a result, two BCSO deputies were investigated by internal affairs and a Sargent was placed on restricted duty.

45. BCSO also sent out a memorandum warning BCSO deputies to stop the cut-and-paste practice.

46. The memorandum required supervisors to tell their deputies of the warning at roll call, and also reiterated that several prior warnings to discontinue the practice had been given.

47. The memorandum advised the supervisors, "You are hereby directed to advise your subordinates, co-workers, and colleagues that boilerplate reports for official law enforcement reports, supplements, investigate actions, and arrest reports shall not be utilized under any circumstances."

48. The memorandum stated as to the practice that, "At best, the use of templates or boilerplates in reporting is a sign of mass produced, low quality effort. At its worst, the use of templates or boilerplates in reporting may constitute a crime."

49. Finally, the memorandum stated, "However, when it comes to actions and statements of suspects and witnesses, it is a rare occurrence that those statements and actions are

identical. To represent otherwise in an official law enforcement or arrest report would be inaccurate, and possibly, untruthful."

50. In October 2005, BCSO promulgated its Standard Operating Procedures (SOPs) within the organization.

51. Section 2.3 of the SOPs states: "It is recognized that many incidents or crimes have common factors that would be reflected in a document, such as an Event or Investigative Action Report. However, this does not give an employee licenses to use a "cookie-cutter," "boiler plate" or similar approach to completing reports. Each incident, event, or crime has unique factors that must be recorded as they have been learned."

52. At the time Detective Ayra and Deputy Martin cut-and-pasted their affidavit and reports, Sheriff Israel, Detective Ayra and Deputy Martin, due to these prior issues, were on notice not to engage in such cut-and-past practice and were aware same could violate a person's constitutional rights and be considered a criminal act.

53. Although Detective Ayra and Deputy Martin were aware at the time of Mr. Minor's arrest that they had breached protocol and had committed perjury and other criminal actions in falsifying their affidavits and reports, they failed to inform Mr. Minor, his counsel or others of their actions, and instead maliciously prosecuted Mr. Minor until the State Attorney's Office, in light of the above-cited inconsistencies and criminal violations, finally dismissed the charge against Mr. Minor on February 2, 2017.

54. During the time the Defendants continued to maliciously prosecute him, Mr. Minor remained seized as his liberty was restrained in that" he was bound over to the Court to appear for trial and to answer the state's charges." *Albright v. Oliver*, 510 U.S. 266, 276-79, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

55. Mr. Minor posted a bond, had limitations on his interstate travel, and was required to attend, or have counsel attend, all court appearances.

56. He was required to retain attorneys to assist him in his defense and in uncovering the untruthful and criminal tactics of the Defendants.

57. The Defendants also confiscated the new firearm he had purchased and did not return it until more than a year later.

58. As a result of the Defendants' false accusations and malicious prosecution of Mr. Minor, he has been humiliated and defamed.

59. The media found out about Mr. Minor's arrest and reported it in the paper and on the news during the pendency of the investigation and prosecution of Mr. Minor.

60. The media obtained copies of the falsified affidavits and reports and ran news articles wherein they cited to the falsified affidavits and reports.

61. The news articles continued from the day he was arrested until and after the charge was dropped in February 2017.

62. Before his arrest, Mr. Minor was a well-known, well-liked and respected former Pro-athlete who played for several years in the NFL.

63. Mr. Minor was known for his integrity and ethical principles on and off the field.

64. A google search of Travis Mr. Minor will yield results on Travis Mr. Minor as a former Pro-footballer who was arrested by the Defendants for solicitation of prostitution.

65. Prior to the arrest Mr. Minor was well-liked and respected by family, friends, colleagues, former athletic partners, and those who met him.

66. Because of the arrest and subsequent charge by the BSO, Mr. Minor's name has been disgraced and muddied.

67. During the prosecution of Mr. Minor, Deputy Martin, Detective Ayra and other deputies were deposed by Mr. Minor's attorney, during which time the above inconsistencies and criminal actions were discovered.

68. On or about February 2nd, 2017, the State Attorney's Office dismissed the charges against Mr. Minor.

**COUNT I: VIOLATION OF 42 U.S.C. § 1983 BY DEPUTY MARTIN (MALICIOUS PROSECUTION)**

69. This is a cause of action for violation of Mr. Minor's civil rights under 42 U.S.C. § 1983 for Deputy Martin's malicious prosecution of Mr. Minor and for damages.

70. Mr. Minor re-alleges and re-avers the allegations contained in paragraphs 1 through 68 above as fully set forth herein.

71. Mr. Minor has the right under the Fourth Amendment of United States Constitution to be free from the illegal seizure of his person by law enforcement officers.

72. Furthermore, Mr. Minor has the right under the Second Amendment to bear arms.

73. On August 29th, 2014, Deputy Martin, under color of law, arrested Mr. Minor and continued to prosecute Mr. Minor until February 2, 2017, in violation of Mr. Minor's Constitutional right to be free from the illegal seizure of his person as described above and in violation of his Second Amendment right to bear arms.

74. No law enforcement officer, undercover or not, in Deputy Martin's position could have thought that such continued prosecution would be objectively reasonable in light of the facts confronting such an officer.

75. Deputy Martin's arrest of Mr. Minor set in motion a criminal judicial proceeding against him that continued until the State Attorney's Office dismissed the charge and proceeding in favor of Mr. Minor.

76. Deputy Martin, along with Detective Ayra, caused the criminal proceeding to be brought against Mr. Minor.

77. There was no probable cause for the criminal proceeding, and Deputy Martin, armed with knowledge of her malfeasance and the malfeasance of Detective Ayra, prosecuted Mr. Minor with malice.

78. As a result of Deputy Martin's malicious prosecution, Mr. Minor has suffered damages.

79. Deputy Martin's actions were intentional, wrongful and unlawful and were carried out in furtherance of the policies and practices established by the BCSO to ignore their own protocol and to have their deputies continue to falsify affidavits and police reports.

80. Deputy Martin's actions are not acceptable in a civilized society.

81. A reasonable law enforcement officer would know that the actions were violative of Mr. Minor's Constitutional rights.

82. The acts of Deputy Martin violated the clearly established Constitutional rights of Mr. Minor, rights of which every reasonable member of the public or governmental entity should have known.

83. While viewed in their totality, Deputy Martin's actions evidence a disregard of, or indifference to, the rights and safety of Mr. Minor.

84. Mr. Minor has retained the undersigned counsel to bring this action under 42 U.S.C. § 1983 and is entitled to recover from Deputy Martin a reasonable fee for said counsel pursuant to 42 U.S.C. § 1988 and all other relevant Federal Statutes.

WHEREFORE, Mr. Minor respectfully requests this Honorable Court to take jurisdiction of this cause and the parties to this action and enter an award of damages in favor of Mr. Minor and against Deputy Martin and to award Mr. Minor his attorneys' fees and costs pursuant to 42

U.S.C. § 1988 and other applicable laws and/or to enter judgement against Deputy Martin in her individual and official capacity.

### COUNT II: VIOLATION OF 42 U.S.C. § 1983 BY DETECTIVE AYRA (MALICIOUS PROSECUTION)

85. This is a cause of action for violation of Mr. Minor's constitutional rights brought under 42. U.S.C. §1983 for Detective Ayra's malicious prosecution of Mr. Minor and for damages.

86. Mr. Minor re-alleges and re-avers the allegations contained in paragraphs 1 through 68 above as fully set forth herein.

87. Mr. Minor has the right under the Fourth Amendment of United States Constitution to be free from the illegal seizure of his person by law enforcement officers.

88. Furthermore, Mr. Minor has the right under the Second Amendment to bear arms.

89. On August 29th, 2014, Detective Ayra, under color of law, assisted Deputy Martin in the arrest and malicious prosecution of Mr. Minor until February 2, 2017, in violation of Mr. Minor's Constitutional right to be free from the illegal seizure of his person as described above and in violation of his Second Amendment right to bear arms.

90. No law enforcement officer, undercover or not, in Detective Ayra's position could have thought that such continued prosecution would be objectively reasonable in light of the facts confronting such an officer.

91. Detective Ayra's arrest of Mr. Minor set in motion a criminal judicial proceeding against him that continued until the State Attorney's Office dismissed the charge and proceeding in favor of Mr. Minor.

92. Detective Ayra and Deputy Martin caused the criminal proceeding to be brought against Mr. Minor.

93. There was no probable cause for the criminal proceeding, and Detective Ayra, armed with knowledge of her malfeasance and the malfeasance of Deputy Martin, prosecuted Mr. Minor with malice.

94. As a result of Detective Ayra's malicious prosecution, Mr. Minor has suffered damages.

95. Detective Ayra's actions were intentional, wrongful and unlawful and were carried out in furtherance of the policies and practices established by the BCSO to ignore their own protocol and to have their deputies continue to falsify affidavits and police reports.

96. Detective Ayra's actions are not acceptable in a civilized society.

97. A reasonable law enforcement officer would know that the actions were violative of Mr. Minor's Constitutional rights.

98. The acts of Detective Ayra violated the clearly established Constitutional rights of Mr. Minor, rights of which every reasonable member of the public or governmental entity should have known.

99. While viewed in their totality, Deputy Martin's actions evidence a disregard of, or indifference to, the rights and safety of Mr. Minor.

100. Mr. Minor has retained the undersigned counsel to bring this action under 42 U.S.C. § 1983 and is entitled to recover from Detective Ayra a reasonable fee for said counsel pursuant to 42 U.S.C. § 1988 and all other relevant Federal Statutes.

WHEREFORE, Mr. Minor respectfully requests this Honorable Court to take jurisdiction of this cause and the parties to this action and enter an award of damages in favor of Mr. Minor and against Detective Ayra and to award Mr. Minor his attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable laws and/or to enter judgement against Detective Ayra in her individual and official capacity.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1983 AGAINST ISRAEL

101. This is a cause of action for violation of Mr. Minor's civil rights under 42 U.S.C. § 1983 against Israel and for damages based upon the conduct of Detective Ayra and Deputy Martin having been conducted in furtherance of Israel's policies and practices.

102. Mr. Minor re-alleges and re-avers the allegations contained in paragraphs 1 through 68 as if fully set forth herein.

103. Mr. Minor has the clearly established right under the United States Constitution and Constitution of the State of Florida to be free from the illegal seizure/detention of his person, as well as the Second Amendment right to bear arms.

104. In violation of his Constitutional rights, Mr. Minor was falsely arrested on August 29, 2014 and maliciously prosecuted until February 2, 2017, at the hands of Detective Ayra and Deputy Martin who were acting in accordance with, and in furtherance of, the policies and practices of the Israel.

105. It is the custom and policy of Israel to encourage its law enforcement to falsify affidavits and police reports used to detain citizens and which lead to the malicious prosecution of such citizens, and the violation of their constitutional rights.

106. It is the custom, policy and practice of Israel to fail to train his officers to properly complete probable cause affidavits and police reports.

107. It is a custom, policy and practice of Israel to ignore and fail to discipline misconduct by his deputies when they make prepare false probable cause affidavits and police reports and then swear under oath to such false affidavits and reports.

108. From August 29th, 2014 until February 2, 2017, Israel, through his employees and agents, acting in a course and scope of their duties as law enforcement officers, under the

color of law, deprived Mr. Minor of his rights under the United States Constitution in violation of 42 U.S.C. § 1983, in that, Mr. Minor was maliciously prosecuted, causing damages to Mr. Minor.

109. Violation of his Constitutional rights entitles Mr. Minor to an award of damages for loss of those rights and the damages that resulted thereof.

110. Israel, through his employees and agents acting in the course and scope of their duties as law enforcement officers, took the actions complained of above with knowledge that the actions were in direct violation of the United States Constitution and the rights of Mr. Minor.

111. The policies, customs and procedures of Israel, or lack thereof, were the driving force causing Detective Ayra and Deputy Martin to act as above described and resulting in the malicious prosecution of Mr. Minor.

112. The actions of Detective Ayra and Deputy Martin were approved or ratified by Israel through his lack of training and discipline of his officers.

113. When viewed in their totality, the actions of Detective Ayra and Deputy Martin, as ratified by Israel, evidence his disregard of, or indifference to, the rights and safety of Mr. Minor.

114. As a direct result of the policies, customs and procedures of Israel, Mr. Minor suffered damages resulting from the violation of his Fourth, Fourteenth and Second Amendment rights.

115. Mr. Minor has retained the undersigned counsel to bring this action under 42 U.S.C. § 1983 and is entitled to recover from Israel a reasonable fee for said counsel pursuant to 42 U.S.C. § 1988.

WHEREFORE, Mr. Minor respectfully requests tis Honorable Court to take jurisdiction of this cause and the parties to this action and enter an award of damages in favor of Mr. Minor and against Israel and to award Mr. Minor his attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable laws and/or to enter judgement against Israel in his official capacity. Mr. Minor further requests injunctive relief to prevent Israel from continuing the policies, procedures, and practices set forth herein.

### COUNT V: MALICIOUS PROSECUTION BY DEPUTY MARTIN

116. This is a cause of action for false imprisonment and detention against Deputy Martin and for damages.

117. Mr. Minor re-alleges and re-avers the allegations contained in paragraphs 1 through 68 as if fully set forth herein.

118. Beginning August 29, 2014 and continuing until February 2, 2017, Deputy Martin caused a criminal proceeding to be brought and continued against Mr. Minor, as they prepared the false probable cause affidavits and police reports that led to the prosecution of Mr. Minor.

119. The actions of Deputy Martin and Detective Ayra were the cause of the criminal proceeding.

120. The criminal proceeding was terminated in favor of Mr. Minor when the State Attorney's Office dismissed the criminal charge against Mr. Minor.

121. There was no probable cause for the criminal proceeding to have been initiated or continued.

122. Deputy Martin acted in malice in prosecuting Mr. Minor as she had knowledge of the false affidavits and police reports prepared by she and Detective Ayra.

123. As a direct and proximate cause of the actions of Deputy Martin, Mr. Minor has suffered damages that include, but are not limited to, attorney's fees to defend the criminal proceeding, embarrassment, humiliation, disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Mr. Minor respectfully requests this Honorable Court to take jurisdiction of this cause and the parties to his action and enter an award of damages against Deputy Martin for all damages allowed by law, to include damages for Mr. Minor's loss of enjoyment of life, embarrassment, inconvenience, mental anguish and such other further relief this Honorable Court deems just and equitable under the circumstances.

## COUNT VI: MALICIOUS PROSECUTION BY DETECTIVE AYRA

124. This is a cause of action for false imprisonment and detention against Detective Ayra and for damages.

125. Mr. Minor re-alleges and re-avers the allegations contained in paragraphs 1 through 68 as if fully set forth herein.

126. Beginning August 29, 2014 and continuing until February 2, 2017, Detective Ayra caused a criminal proceeding to be brought and continued against Mr. Minor.

127. The actions of Deputy Martin and Detective Ayra were the cause of the criminal proceeding as they prepared the false probable cause affidavits and police reports that led to the prosecution of Mr. Minor.

128. The criminal proceeding was terminated in favor of Mr. Minor when the State Attorney's Office dismissed the criminal charge against Mr. Minor.

129. There was no probable cause for the criminal proceeding to have been initiated or continued.

130. Detective Ayra acted in malice in prosecuting Mr. Minor as she had knowledge of the false affidavits and police reports prepared by she and Deputy Martin.

131. As a direct and proximate cause of the actions of Detective Ayra, Mr. Minor has suffered damages that include, but are not limited to, attorney's fees to defend the criminal proceeding, embarrassment, humiliation, disgrace and injury, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

WHEREFORE, Mr. Minor respectfully requests this Honorable Court to take jurisdiction of this cause and the parties to his action and enter an award of damages against Detective Ayra for all damages allowed by law, to include damages for Mr. Minor's loss of enjoyment of life, embarrassment, inconvenience, mental anguish and such other further relief this Honorable Court deems just and equitable under the circumstances.

### COUNT VII: CIVIL CONSPIRACY AMONG ALL DEFENDANTS

132. Mr. Minor re-alleges and re-avers the allegations contained in paragraph 1 through 68 as if fully set forth herein.

133. This is a cause of action for civil conspiracy among Israel, Detective Ayra and Deputy Martin.

134. Israel, Detective Ayra, and Deputy Martin conspired to maliciously prosecute Mr. Minor by preparing false probable cause affidavits and police reports and as otherwise set forth above.

135. Malicious prosecution and knowingly presenting false affidavits to a Court are crimes.

136. All such acts were unlawful and committed by unlawful means, and were further committed in the pursuance and furtherance of said conspiracy.

137. Mr. Minor was damaged as a result of such acts committed under the conspiracy.

WHEREFORE, Mr. Minor respectfully requests this Honorable Court to take jurisdiction of this cause and the parties to his action and enter an award of damages against all Defendants for all damages allowed by law, to include damages for Mr. Minor's pain, suffering, loss of enjoyment of life, embarrassment, inconvenience, mental anguish and such other further relief this Honorable Court deems just and equitable under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable herein.

Respectfully Submitted,

/s/ Jack C. Morgan III
Jack C. Morgan III, Esquire
Florida Bar No. 0126527
jmorgan@floridalegalrights.com
lclement@floridalegalrights.com
dosnac@floridalegalrights.com
Aloia Roland Lubell & Morgan, PLLC
2254 First Street
Fort Myers, FL 33901
Telephone: 239-791-7950
Facsimile:  239-791-7951
*Attorney for Plaintiff*